IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

ALISA WALKER for
Israel El Walker                                                                PLAINTIFF

            v.                    Civil No. 05-4062

JO ANNE B. BARNHART, Commissioner
Social Security Administration                                                  DEFENDANT

**MEMORANDUM OPINION**

The plaintiff in this case, Alisa Walker (hereinafter "plaintiff"), has appealed the final decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner"), denying her claim on behalf of her minor son, Israel El Walker (hereinafter "claimant"), for supplemental security income (hereinafter "SSI") benefits, under § 1602 of Title XVI, 42 U.S.C. § 1381a. Both parties have filed appeal briefs (Docs. ). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**Procedural and Factual Background**

The plaintiff filed the application for SSI on November 19, 2003, with a protective filing date of October 10, 2003, alleging an onset date of September 25, 2003. (Tr. 50-54, 75.) The application was initially denied (Tr. 22-23) and that denial was upheld upon reconsideration (Tr. 24-25). Plaintiff then made a request for a hearing by an Administrative Law Judge (ALJ). (Tr. 34.)

On March 10, 2005, a hearing was held by the ALJ. The plaintiff and claimant were represented by counsel at this hearing. (Tr. 278-310.) The ALJ issued an unfavorable ruling on

June 13, 2005. (Tr. 9-20.) The plaintiff then requested a review of the hearing by the Appeals Council (Tr. 7-9), which denied that request on July 30, 2005 (Tr. 4-6); thus, the ALJ's decision became the final action of the Commissioner. The plaintiff filed her complaint with this court on September 1, 2005, seeking judicial review of that decision. (Doc. 1.) Both parties have filed appeal briefs with the court. (Docs. 8,9.) This case is before the undersigned pursuant to the consent of the parties. (Doc. 2.)

The plaintiff asserts disability due to the claimant's diagnosis of Type I juvenile diabetes mellitus and right ankle fracture over a growth plate. There is also some scant evidence in the record of asthma, depressive disorder, and attention deficit hyperactivity disorder (ADHD), however the plaintiff repeatedly stated that the disability claim is based on the diabetes diagnosis and right ankle fracture, and fervently denies that this claim is based on ADHD or asthma. The plaintiff states that the ADHD was a mis-diagnosis, the symptoms of which could be explained by the diabetes. (Tr. 30, 34, 36, 98, 282-283.)

The ALJ found the following:

1. The child was boon on October 25, 1993, and he is currently in the fifth grade.

2. The child has never engaged in substantial gainful activity. (20 C.F.R. 416.924(b)).

3. The medical evidence in this case establishes that the child has been diagnosed with diabetes mellitus, asthma, depressive disorder, ADHD, and status post ankle fracture, impairments which, in combination, are "severe" within the meaning of 20 C.F.R. 416.924(c) and the Social Security Rulings 96-3p and 85-28 because the child has more than slight abnormalities and more than minimal functional limitations. (20 C.F.R. 416.924(c)).

4. The claimant's impairments do not meet or equal in severity the appropriate medical findings contained in 20 C.F.R. Part 404, Appendix 1 to Subpart P (Listing of Impairments). No treating or examining physician has mentioned

findings equivalent in severity to the criteria of any listed impairment. In reaching this conclusion, I have considered the opinions of the medical and psychological consultants from the State Agency who evaluated this issue at the initial and reconsideration levels of the administrative review process, and who reached the same conclusion. (Exhibits 6F and 7F). (20 C.F.R. 404.1527(f), 416.927(f); SSR 96-6p)). The child's type I diabetes mellitus does not meet or equal Listing 109.08, which requires treatment with parenteral insulin and recent, recurrent hospitalizations with acidosis or recent, recurrent episodes of hypoglycemia. In this case, the medical evidence establishes that he has not had recurrent hospitalizations with acidosis; and that he has not had recent, recurrent episodes of hypoglycemia, for example. His asthma does not meet or equal Listing 103.03, which requires asthma attacks requiring physician intervention, occurring at least once every two months or at least six times a year, in spite of prescribed treatment. In this case, the medical evidence establishes that he has not had asthma attacks at listing level frequency. His depressive disorder does not meet or equal Listing 112.04, as he does not have medically documented evidence of a major depressive syndrome, for example. His status post right ankle fracture does not meet or equal Listing 101.06, as there is no evidence of a non-solid union and inability to ambulate effectively, for example.

> 5. The child does not have an "extreme" limitation in any domain of functioning, or a "marked" limitation in two domains of functioning, and he does not functionally equal the severity of the listings. (20 C.F.R. 416.924(d)(2) and 416.926a).
>
> 6. The child's subjective complaints are considered credible only to the extent they are supported by the evidence of record as summarized in the text of this decision.
>
> 7. The child has not been under a "disability" at any time from the alleged onset date through the date of this decision (20 C.F.R. 416.906).

(Tr. 19-20.)

On appeal, the plaintiff states that the issues presented include whether (1) the claimant has an extreme limitation in any domain of functioning, or a marked limitation in two domains of functioning, (2) the claimant's subjective complaints should be considered credible only to the extent they are supported by the evidence of record as summarized in the text of the ALJ's decision, and (3) there is substantial evidence to support the determination that the claimant was not under a disability. In a sparse argument, the plaintiff states:

-3-

AO72A
(Rev. 8/82)

> We believe that the testimony and the medical evidence show that the minor Plaintiff has at least marked category of function in regard to concentration and focusing particularly as to school work and also marked in the category of motor skills because of the severe fracture of his ankle and it being located across a growth plate. The child is unable to play sports in school. Plus the over all health category in regard to minor children is affected to the extreme by having to monitor six times a day and take three shots in regard to insulin regulation and the minor Plaintiff passing out if it's done wrongly.

(Doc. 8.)

## **Applicable Law**

This court's review is limited to whether the decision of the Commissioner to deny disability benefits to the plaintiff is supported by substantial evidence on the record as a whole. *See Terrell v. Apfel*, 147 F.3d 659, 661 (8th Cir.1998); *Bryant v. Apfel*, 141 F.3d 1249, 1252 (8th Cir.1998); *Lorenzen v. Chater*, 71 F.3d 316, 318 (8th Cir.1995). Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion. *See Jackson v. Apfel*, 162 F.3d 533, 536-537 (8th Cir.1998); *Briggs v. Callahan*, 139 F.3d 606, 608 (8th Cir.1998); *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir.1996). We must consider both evidence that supports and evidence that detracts from the Commissioner's decision, but the denial of benefits shall not be overturned even if there is enough evidence in the record to support a contrary decision. *See Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir.1996) (*citing Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir.1993). Thus, this court's review is both limited and deferential to the agency. *See Ostronski v. Chater*, 94 F.3d 413, 416 (8th Cir.1996).

The regulations provide:

(a) *Basic considerations*. We consider all relevant information (*i.e.,* evidence) in your case record. The evidence [] may include information from medical

sources, such as your pediatrician, other physicians, psychologist, or qualified speech-language pathologist; other medical sources not listed in §416.913(a), such as physical, occupational, and rehabilitation therapists; and nonmedical sources, such as your parents, teachers, and other people who know you.

    *(1) Medical evidence -- (i) General*.  Medical evidence of your impairment(s) must describe symptoms, signs, and laboratory findings.  The medical evidence may include, but is not limited to, formal testing that provides information about your development or functioning in terms of standard deviations, percentiles, percentages of delay, or age or grade equivalents.  It may also include opinions from medical sources about the nature and severity of your impairments.  (*See* § 416.927).

    *(ii) Test scores.*  We consider all of the relevant information in your case record and will not consider any single piece of evidence in isolation.  Therefore, we will not rely on test scores alone when we decide whether you are disabled.  (*See* § 416.926a(e)) for more information about how we consider test scores.

20 C.F.R. § 416.924a(a)(1)(i)-(ii).

## Discussion

The ALJ must properly follow the new sequential evaluation process, set forth in 20 C.F.R. § 416.924.  Under the new standard, a child must prove that he has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  *See* 42 U.S.C. § 1382c(a)(3)(c)(I); 20 C.F.R. § 416.906.

Congress decided that, as it relates to children seeking SSI disability benefits, the sequential analysis should be limited to the first three steps.  This is made clear in the House conference report on the law, prior to enactment. Concerning childhood SSI disability benefits, the report states:

The conferees intend that only needy children with severe disabilities be eligible

> for SSI, and the Listing of Impairments and other current disability determination regulations as modified by these provisions properly reflect the severity of disability contemplated by the new statutory definition.... The conferees are also aware that SSA uses the term "severe" to often mean "other than minor" in an initial screening procedure for disability determination and in other places. The conferees, however, use the term "severe " in its common sense meaning.

*See* 142 Cong. Rec. H8829-92, 8913 (1996 WL 428614), H.R. Conf. Rep. No. 104- 725 (July 30, 1996).

Consequently, under the new law, the analysis ends at step three with the determination of whether the child's impairments meet or equal any of the listed impairments. More specifically, a determination that a child is disabled requires the following three-step analysis. *See* 20 C.F.R. § 416.924(a). First, the ALJ must consider whether the child is engaged in substantial gainful activity. *See* 20 C.F.R. § 416.924(b). If the child is so engaged, he or she will not be awarded SSI benefits. *See id.* Second, the ALJ must consider whether the child has a severe impairment. *See* 20 C.F.R. § 416.924(c). A severe impairment is an impairment that is more than a slight abnormality. *See id.* Third, if the impairment is severe, the ALJ must consider whether the impairment meets or is medically or functionally equal to a disability listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). *See* 20 C.F.R. § 416.924(c). Only if the impairment is severe and meets or is medically or functionally equal to a disability in the Listings will it constitute a disability within the meaning of the Act. *See* 20 C.F.R. § 416.924(d). To determine whether an impairment is functionally equal to a disability included in the Listings, the ALJ must assess the child's developmental capacity in six specified domains. *See* 20 C.F.R. § 416.926a(b)(1). The six domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating

with others; (4) moving about and manipulating objects; (5) caring for yourself; and, (6) health and physical well-being. *See* 20 C.F.R. § 416.926a(b)(1).

If the child claiming SSI benefits has marked limitations in two categories or an extreme limitation in one category, the child's impairment is functionally equal to a disability in the Listings. *See* 20 C.F.R. § 416.926a(b)(2). A marked limitation is an impairment that is "more than moderate" and "less than extreme." A marked limitation is one which seriously interferes with a child's ability to independently initiate, sustain, or complete activities. *See* 20 C.F.R. § 416.926a(e)(2). An extreme limitation is "more than marked", and exists when a child's impairment(s) interferes very seriously with his or her ability to independently initiate, sustain or complete activities. Day-to-day functioning may be very seriously limited when an impairment(s) limits only one activity or when the interactive and cumulative effects of the impairment(s) limit several activities. *See* 20 C.F.R. § 416.926a(e)(3).

The ALJ determined that the claimant did not have any limitations in his ability to acquire and use information, move about or manipulate objects, or care for his self. Further, the ALJ found that the claimant had less than "marked" limitations in his ability to attend and complete tasks, interact and relate with others, and in his health and well-being. (Tr. 16-18.)

In the domain of acquiring and using information, the regulations provide that school-aged children (6 to attainment age of 12) should be able to read, write, discuss history and science, produce oral and written projects, solve mathematical problems, take achievement tests, do group work, enter into class discussions, share information, express ideas, and respond to others. *See* 20 C.F.R. § 416.926a(b)(2)(iv).

The record reflects that the claimant generally obtained grades of A, B, and C in his class

AO72A
(Rev. 8/82)

work, and satisfactory reports on his conduct, writing, music, and physical education. (Tr. 217.) Further, IQ testing rated him at 92, well within normal ranges. (Tr. 216.) He was not enrolled in special education classes (Tr. 71, 79, 212), but did receive some after-school tutoring three days a week with a school teacher to help the claimant complete homework. (Tr. 79.) In light of this record, the ALJ did not err in finding the claimant had no limitations with regards to his ability to acquire and use information.

In the domain of moving about and manipulating objects, the regulations state that school-aged children should be able to move at an efficient pace at school, home, and neighborhood; enjoy a variety of physical activities such as running, jumping, throwing, kicking, catching, or hitting a ball; and use items such as kitchen and household tools, scissors, and write. *See* 20 C.F.R. § 416.926a(j)(2)(iv). Examples of limited functioning in this area include muscle weakness, joint stiffness, sensory loss; difficulty climbing stairs, disorganized locomotion, difficulty with balance; difficulty coordinating gross motor movements such as bending, crawling, running, jumping, or riding a bike; difficulty with sequencing hand or finger movements; difficulty grasping objects; and poor hand-eye coordination when using a pencil or scissors. *See* 20 C.F.R. § 416.926a(j)(3)(i-vi).

In May 2004, claimant suffered an ankle fracture after falling from the monkey bars at school. He was assessed with a Salter-Harris type II distal tibial fracture with a spiral fibular fracture. Surgery was conducted to perform a gentle closed reduction on the right ankle. (Tr. 256-258.) Claimant was placed in a long leg cast and monitored repeatedly. On June 3, 2004, Dr. John P. Young reported that the claimant was doing well, and that he mentioned to the mother that claimant the "possibility of growth plate arrest or angular deformity over time." On

AO72A
(Rev. 8/82)

June 17, 2004, claimant was placed in a short leg cast with partial weight bearing. On July 15, 2004, he was placed in a boot walker. Dr. Young noted at that time, "I have talked to the mother about the possibility, due to the fact that he broke through his growth plate, that he could have a possible angular abnormality or growth plate problem in the future. She understands this and understands the significance of continuing to follow-up with an orthopedist over the next several months." (Tr. 255.) Dr. John R. Gregory saw the claimant on August 19, 2004, and noted that x-rays showed "complete healing of the fracture." (Tr. 254.) Although the plaintiff states that the claimant is prohibited from participating in sports, there is nothing in the record to support this supposed claim. The record only reflects that plaintiff's ankle healed completely and that some monitoring needs to be followed through to guard against future problems. There is no evidence in the records to suggest that claimant is unable to perform physical tasks or that he has continuing problems from the ankle fracture, rather the record only supports that claimant may have future problems and should monitor his ankle closely. In light of this, the ALJ did not err in finding no limitations under the domain of moving about and manipulating objects.

In the domain of caring for one's self, the regulations provide that school-aged children should be able to perform most day-to-day activities such as bathing and dressing, to determine when one feels ill, to begin understanding right from wrong, and to be able to control one's behavior and begin to imitate the behavior of the adults that child knows. *See* 20 C.F.R. § 416.926a(k)(2)(iv). The plaintiff indicated that the claimant does not suffer any limitations in his ability to care for his personal needs. (Tr. 62.) In fact, claimant testified at the hearing that he is responsible for monitoring his own blood sugar six times a day. He is also responsible for consuming the proper foods or water in response to the test results. (Tr. 288-289.) The record

AO72A
(Rev. 8/82)

does not indicate that plaintiff suffers any limitations in his ability to care for himself, and thus the ALJ did not err in so finding.

In the domain of attending and completing tasks, the regulations direct consideration of how well the child focuses and maintains attention; begins, carries through, and finishes activities; and the pace and ease at which the child completes tasks. For school-aged children, the regulations provide that the child should be able to focus attention, follow directions, remember classroom materials, complete classwork and homework assignments, change activities without distracting others, stay on task and in place without distracting others, read independently, and complete family chores. *See* 20 C.F.R. § 416.926a(h)(2)(iv). In the domain of interacting and relating to others, the regulations direct that a school-aged child should be able to form friendships with other children, understand how to work in groups, begin to understand another's point of view, talk to all people of other ages, tell stories, and communicate to others. *See* 20 C.F.R. § 416.926a(i)(2)(iv).

In a questionnaire, Joyce Thomas, the claimant's teacher, reported that while claimant has many friends, he has exhibited trouble maintaining his temper, staying in his seat, and staying focused on classwork. Thomas indicated that claimant has some difficulty with socializing with "trouble-makers," concentrating on classwork, interrupting, lying or stealing, being physically overactive, having temper outbursts, learning from his mistakes, and acting childish or immature. Ms. Thomas adds that claimant suffers from a serious detriment of being aggressive and fighting monthly. In response to misbehaving, Thomas has removed recess privileges from claimant. This occurs on a monthly basis, and claimant responds positively to this intervention for a while. Laurel McCarter, the school counselor, reports that the claimant has no record of being in

trouble, being sent to the principal's office, or being paddled. (Tr. 212-214.) The plaintiff also indicated that the claimant does not attend to chores around the house, work on arts or crafts projects, or completes homework. (Tr. 63.) While the record does indicate that claimant has some difficulties with staying focused on classwork and homework, and expresses some problems with physical aggression, there is no substantial evidence in the record to support a finding other than that made by the ALJ; that being claimant suffers less than "marked" limitations in his ability to attend and complete tasks and his ability to interact and relate to others.

In the domain of health and well-being, Commissioner considers the cumulative physical effects of the physical or mental impairments on the child's functioning which were not considered under the domain of moving about and manipulating objects. Under the regulations, the Commissioner considers limitations such as generalized symptoms, somatic complaints related to impairments, limits in physical functioning due to treatments, and other generalized medical conditions. *See* 20 C.F.R. § 416.926a(l).

On September 25, 2003, the claimant was diagnosed with juvenile diabetes. (Tr. 108.) On September 29, 2003, he was admitted to the St. Michael Health Care Center. He was treated for a couple of days with a regular insulin sliding scale, and then with a combination of regular and NPH. Claimant was discharged on October 4, 2003, after receiving instructions and training from the diabetic educator. (Tr. 135-136.) Instructions were provided for claimant's school as to the need for claimant to regularly check his blood sugar and the availability of snacks to help him control his blood sugar. (Tr. 199.) On November 5, 2003, claimant visited the Pediatric Diabetes Clinic at Arkansas Children's Hospital and saw Dr. Kathryn Thrailkill. There he

-11-

participated in an outpatient education class and received a nutrition consult. Dr. Thrailkill noted that the diabetes was well-controlled at that time. (Tr. 227.) On February 11, 2004, claimant returned to Children's Hospital for a follow-up exam. Again, Dr. Thrailkill noted that the diabetes was well-controlled, and no changes were made in claimant's insulin dose. (Tr. 228.) In October 2004, claimant passed out while on a school field trip and had to be taken to a local hospital for treatment. He also passed out once at home, and on two occasions in one year, the school has contacted the plaintiff to have her come on the claimant's condition. (Tr. 298-301.) Plaintiff testified that when claimant's blood sugar drops too low, claimant has difficulty with comprehension and concentration. (Tr. 301.) While claimant wears reading glasses, there is no medical evidence to suggest that his vision problems are related to his diabetes. (Tr. 304.) While claimant obviously suffers from the juvenile diabetes which requires him to closely monitor his blood sugar, there is substantial evidence in the record supports the ALJ's determination that claimant has less than "marked" limitations in the domain of health and physical well-being.

Under this domain, to have a "marked" limitation, the claimant must be "frequently ill because of [his] impairment(s) that result in significant, documented symptoms or signs." Frequent means episodes of illness that occur on an average of 3 times a year and each last 2 weeks or more. Also, a "marked" limitation may be found where the episodes of illness occur more than 3 times a year, but last less than 2 weeks each. See 20 C.F.R. § 416.926a(e)(2)(iv). Nothing in the record shows that claimant suffers from such episodes of illness. The record reflects only one substantial hospitalization for diabetes, and that hospitalization lasted only 6 days. The ALJ did not err in finding that claimant does not have a "marked" or "extreme"

limitation in the health and physical well-being domain.

**Conclusion:**

Accordingly, we conclude that there exists substantial evidence in the record to support the ALJ's decision. Therefore, we find that the decision of the ALJ should be affirmed and the Complaint should be dismissed with prejudice.

DATED this 20th day of September 2006.

                                                      **/s/ Beverly Stites Jones**
                                        _____
                                        HON. BEVERLY STITES JONES
                                        UNITED STATES MAGISTRATE JUDGE

**AO72A**
**(Rev. 8/82)**